UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ATLANTIC SOUNDING CO., INC.                CIVIL ACTION

VERSUS                                      NO: 09-6831

PARKER                                      SECTION: "J" (4)


## ORDER AND REASONS

**NATURE OF MOTION AND RELIEF SOUGHT:**

Plaintiff and Counterclaim Defendant Atlantic Sounding Co., Inc., and Counterclaim Defendants Weeks Marine, Inc. and the Dredge R.S. WEEKS ("Defendants") filed a **Motion for Summary Judgment (Rec. Doc. 30)** on Atlantic Sounding Co., Inc.'s Complaint for Declaratory Judgment, and Defendant and Counterclaim Plaintiff Jerome Parker's ("Plaintiff") maintenance and cure, unseaworthiness, and Jones Act negligence claims. Plaintiff Mr. Parker submitted a **Response/Memorandum in Opposition (Rec. Doc. 33)**. Additionally, Mr. Parker filed a **Supplemental Memorandum in Opposition (Rec. Doc. 36)**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS:**

Atlantic Sounding Co., Inc. employed Mr. Parker as a deckhand from July 17, 2009 to August 25, 2009, within the meaning of the Jones Act, specifically 46 U.S.C. § 30104. As a standard requirement within the Atlantic Sounding employment

1

process, Mr. Parker underwent a post-offer medical examination on July 14, 2009. The examination included a medical history component wherein Mr. Parker was asked to provide information on his past and current medical history. Mr. Parker answered "No" to questions regarding the history of the following conditions: spine condition; swollen or painful joints; fractured or broken bones; any injury to or painful shoulder or elbow; painful, swollen or deformed bone or joint or history of dislocation; and recurrent back or neck pain or any back or neck injury. Mr. Parker stated that his present health was currently "good." Also, Mr. Parker responded that he had never been refused employment or lost time from a job or school due to inability to assume certain positions, constant or chronic pain of any sort, or other medical reasons. Mr. Parker later testified that the responses that he had provided on his medical history form were inaccurate and he had failed to disclose the truth regarding his medical history just so he could get the job with Atlantic Sounding and Weeks Marine.

Specifically, on July 10, 2009, four days prior to Mr. Parker's post-offer medical examination for Atlantic Sounding Co, Inc., Dr. Ralph P. Katz examined Mr. Parker for a work-related injury to his neck and back that he experienced while working for a prior employer, Sodexo Remote Sites Partnership. Dr. Katz performed a physical examination and reviewed Mr. Parker's X-rays. Dr. Katz' notes show that Mr. Parker stated that his back

2

pain was resolved but that his neck pain was still severe. Accordingly, Dr. Katz ordered Mr. Parker not to work for at least six weeks in order for Mr. Parker to undergo physical therapy and provide Dr. Katz the opportunity to review his MRI scan. Mr. Parker also filed a lawsuit against his prior employer Sodexo Remote Sites Parternship and Noble Drilling Corporation on August 10, 2009, alleging Sodexo's and Noble Drilling's negligence and/or the unseaworthiness of their vessel caused Mr. Parker to sustain severe and disabling injuries when an inadequately and/or improperly secured dryer fell onto him. See Civ. Action No. 09-5480, E.D.L.A. Mr. Parker was receiving maintenance checks from Sodexo pertaining to this injury at the same time he was working for Atlantic Sounding and Weeks Marine. Mr. Parker did not reveal his prior injury to Atlantic Sounding, although he testified at his deposition on June 8, 2010, that he is still suffering from neck and back pain as a result of the injuries he sustained on May 22, 2009, while working for Sodexo.

On July 29, 2009, while working for Atlantic Sounding and Weeks Marine, Mr. Parker sustained an injury to his left index and middle fingers when his left hand became caught between a soft line and the bitt around which the soft line was located. The line in question tied the bow of the M/V SEA MULE to a Weeks Marine pontoon. Mr. Parker was working on the pontoon in the Mississippi River. The deckhands of the M/V SEA MULE and the pontoon, including Mr. Parker, were breaking a connection on the

dredge discharge line. Mr. Parker's supervisor told him to grab the rope attached between the M/V SEA MULE and the pontoon, when the boat pulled and the rope tightened up on Mr. Parker's hand. Mr. Parker indicated on his Employee Injury/Illness Report that "[t]he incident was purely an accident, and not the fault of any person, company, or defective equipment." However, Plaintiff claims that when he was filling out his post-injury report, he "wasn't fully aware," "didn't really understand what went on," and "[i]t took [Mr. Parker] a while to really remember the whole accident."

Mr. Parker returned to the dredge one to two days following the accident for one half of a day under physician's ordered light duty restrictions. Atlantic Sounding and Weeks Marine continued to pay Mr. Parker the same rate of pay during this time. Mr. Parker was required to sit in the leverman's room and to sweep the galley. Plaintiff claims that his duties were not safe for him since he was medicated due to his hand injury and since sweeping conflicted with the doctor's restrictions. He quit working for Atlantic Sounding and Weeks Marine without notice, and without considering whether other light-duty job options may be available within the company.

On October 15, 2009 Atlantic Sounding Co. filed a Complaint (Rec. Doc. 1), seeking declaratory judgment, finding that Mr. Parker fraudulently obtained his employment with Atlantic Sounding by misrepresenting and willfully concealing material

4

medical facts and information, and finding that, as a result, Atlantic Sounding Co. was entitled to deny any and all maintenance and cure benefits and payments that it might otherwise owe to Mr. Parker. Parker filed an Answer (Rec. Doc. 9), and an Amended Answer, with a Counterclaim (Rec. Doc. 12), alleging that Atlantic Sounding and Weeks Marine, Inc., as well as the Dredge R.S. Weeks are liable to him because of Defendants' negligence and unseaworthiness of the vessel. Mr. Parker also claimed that Defendants owed him maintenance and cure benefits from the date of his injury until full recovery. On June 18, 2010, Defendants filed a Motion for Summary Judgment on their Complaint for Declaratory Judgment, and Plaintiff's Counterclaims for maintenance and cure, unseaworthiness and Jones Act negligence claims.

**THE PARTIES' ARGUMENTS:**

*Maintenance and Cure Claims:*

Atlantic Sounding and Weeks Marine aver that summary judgment on Mr. Parker's maintenance and cure claim is appropriate because Jerome Parker failed to disclose to Atlantic Sounding and Weeks Marine in the employment process that he was ordered just four days prior to his post-offer medical examination for Atlantic Sounding to stay out of work for at least six weeks. Defendants cite case law that requires spontaneous disclosure of past medical history at the time of employment. First, spontaneous disclosure is required when, "in

5

the opinion of the seaman, the shipowner would consider them matters of importance." Capone v. Boat St. Victoria, 1989 WL 47387 at *6 (D.Mass 4/27/89); Lorenson v. Jenney Manufacturing Co., 155 F.Supp. 213 (D.Mass. 1957). "The burden in this respect is on the shipowner, and it must be a substantial one." Id. Second, "[w]hen a seaman signs aboard, he must have a good faith belief that he is reasonably fit for duty. A seaman having such belief is entitled to maintenance and cure and is not precluded from relief for failing to voluntarily disclose any illness or disease, whether existing or pre-existing." Capone, 1989 WL 47387 at *6; see Ahmed v. U.S., 177 F.2d 898 (2d Cir. 1949). Therefore, the fact-finder must consider whether the seaman, in good faith, *reasonably* believed himself fit for duty when he signed aboard for duty. Id. The vessel owner is thus charged with presenting substantial evidence that the seaman was aware that he was unfit for duty. Id.

Mr. Parker testified that he knew the disclosure of his prior accident with Sodexo and Dr. Katz's order to remain out of work for six weeks would be a matter of importance to Atlantic Sounding and Weeks Marine at the time of hiring him. Defendants assert that Mr. Parker's admission satisfies their burden to prove that Mr. Parker subjectively believed that, from the employer's perspective, he should have disclosed that four days prior he was instructed not to work by his treating physician. Further, Mr. Parker testified that he was fully aware that he was

6

not fit for duty at the time he applied to work for Atlantic Sounding and Weeks Marine. Atlantic Sounding and Weeks Marine assert that they have satisfied their burden of providing substantial evidence that Mr. Parker knew he was not fit for duty.

Plaintiff Mr. Parker cites jurisprudence that requires that there be a "causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." <u>McCorpen v. Central Gulf S.S. Corp.</u>, 396 F.2d 547, 549 (5th Cir. 1968). A maritime employer who seeks to avoid maintenance and cure on the basis of nondisclosed pre-employment medical facts must be able to draw a "connection between the withheld information and the injury complained of in the lawsuit." <u>Brown v. Parker Drilling Offshore Corp.</u>, 410 F.3d 166, 171 (5th Cir. 2005). Mr. Parker's previous injury affected his back and neck, while the present injury impacted his left hand, which means the requisite causal link is absent.

Moreover, Plaintiff claims he has no memory of ever being informed by Dr. Katz that was he was not to work prior to his post-offer medical examination. Furthermore, Plaintiff avers he has no recollection of ever receiving a slip from Dr. Katz notifying him that he was not to work due to an injury. Mr. Parker underscores that the medical form from Dr. Katz refers to Plaintiff's back pain as "resolved".

Another argument raised by Defendants is that Mr. Parker was

given the opportunity to receive his regular rate of pay and continue his employment under light duty conditions. There is no reason to provide Mr. Parker, who was medically fit for light duty and was provided with a position accommodating his restriction, with the benefit of maintenance and cure payments when he was going to be provided food and lodging by his employment. Thus, Defendants conclude that Mr. Parker is not entitled to maintenance and cure and that his claim for such payments should be dismissed.

Plaintiff Parker alleges that the duties he had to perform after his hand injury were "anything but light": getting on the dredge was unsafe while Plaintiff was medicated. Mr. Parker's duty was sweeping the galley, which he claims to directly conflict with the doctor's light duty restrictions. For this reason, Plaintiff decided not to "put [him]self in any other danger." Mr. Parker argues that Defendants unjustly withheld maintenance and cure and their Motion for Summary Judgment should be denied.

*Unseaworthiness Claims:*

Defendants argue that their Motion for Summary Judgment should be granted because the mere fact that an accident occurs, without more, does not establish that a vessel was unseaworthy. See Metcalfe v. Oswell Towing Co., Inc., 417 F.2d 313, 314 n.2 (5th Cir. 1969). Mr. Parker cannot point to any material issue of fact that supports a finding that the M/V SEA MULE, the pontoon,

or any of their appurtenances, were not fit for their intended use. In fact, Mr. Parker testified that there was nothing wrong with his safety gear, the M/V SEA MULE, or the pontoon, and the crew available was sufficient to do the job assigned. Additionally, Mr. Parker indicated on his Employee Injury/Illness Report that "[t]he incident was purely an accident, and not the fault of any person, company, or defective equipment." Based upon the uncontroverted facts of this case, Mr. Parker cannot prove that the vessels in question here or any of their appurtenances were not fit for their intended use at the time of his injury. Accordingly, Mr. Parker's general maritime claim for unseaworthiness should be dismissed with prejudice.

Plaintiff cites case law holding that unfit crew may contribute to the unseaworthiness of the vessel. Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 496 (1971); Nichols v. Weeks Marine, Inc., 513 F. Supp.2d 627, 635 (E.D. La 2007). Plaintiff claims that his injury was due to the incorrect instructions given to him by the wrong person at the wrong time. His barge supervisor Bob Hagan should not have told Mr. Parker to "take the line off" because the crew was not ready to move yet and the instructions should have been given by the captain. Further, Mr. Hardy, who was supposed to be taking care of the other end of the line, was instead smoking a cigarette. Because Plaintiff Parker can make out a valid case for unseaworthiness of the vessel, Defendants' Motion for Summary Judgment on the issue

of unseaworthiness should be denied.

*Jones Act Negligence Claims:*

Defendants argue that Mr. Parker, in his own testimony, admitted that Atlantic Sounding did not commit a negligent act that was a cause, in whole or in part of his injury. Working with lines and disconnecting and connecting the dredge discharge pipeline are standard daily responsibilities of a deckhand. Mr. Parker had the opportunity to assess the situation prior to releasing the line and thought it was safe to proceed with his general job requirement. Therefore, even though Mr. Parker may have been injured while working aboard one of Atlantic Sounding's and Weeks Marine's vessels, it does not establish Jones Act liability on the part of Atlantic Sounding and Weeks Marine.

Mr. Parker reiterates the same arguments he employed when addressing vessel unseaworthiness. He also notes that he never received the safety manual that addresses how he was supposed to handle the lines. Thus, Defendants' Motion for Summary Judgment on the issue of Jones Act negligence should be denied.

**DISCUSSION:**

*Summary Judgment Standard:*

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Little v. Liquid Air</u>

Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Fed. R. Civ. Proc. 56(c)). The moving party bears the initial burden of demonstrating to the court that there is an absence of genuine factual issues. Id. Once the moving party meets that burden, the non-moving party must go beyond the pleadings and designate facts showing that there is a genuine issue of material fact in dispute. Id. "A factual dispute is 'genuine' where a reasonable jury could return a verdict for the non-moving party. If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper." Weber v. Roadway Exp., Inc., 199 F.3d 270, 272 (5th Cir. 2000) (citations omitted). The non-moving party's burden "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. [The courts] resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. [The courts] do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Little, 37 F.3d 1075 (emphasis in original)(citations omitted).

*Maintenance and Cure Claims:*

Maintenance and cure is designed to compensate a seaman who falls ill while in the service of his vessel. McCorpen, 396 F.2d

11

at 548. The shipowner's duty to provide maintenance and cure has its basis in general maritime law. Id. Maintenance and cure requires the vessel owner to provide food, lodging, and medical services to a seaman injured while serving the ship. Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 441 (U.S. 2001).

The first issue raised in the motion concerns the fact that Mr. Parker concealed his previous injuries from Atlantic Sounding Co. In addressing illnesses that pre-existed the current employment, courts distinguish between cases when employers require the seaman to submit to a pre-employment medical exam and cases where no such exam is required. McCorpen, 396 F.3d at 548-49. Where a seaman must submit to a medical exam and "the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." Id. at 549 (citations omitted). However, "the defense that a seaman knowingly concealed material medical information will not prevail unless there is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." Id. (citing Hazelton v. Luckenback Steamship Co., 134 F.Supp. 525, 528 (D.Mass.1955)).

Plaintiff Parker asserts, and Defendants do not dispute, that there is no causal link between the concealed neck and back pain and the hand injury. Thus, as mandated by the controlling case law, Parker's knowing concealment of his injury does not in

and of itself bar him from eligibility for maintenance and cure.

The second issue raised by Defendants' Motion deals with the fact that Mr. Parker's employer was willing to accommodate his medical restrictions, providing him with light duty at the same pay rate. The Fifth Circuit in <u>Dowdle v. Offshore Exp., Inc.</u>, 809 F.2d 259 (5th Cir. 1987), reviewed maintenance and cure claims of a seaman who chose not to return to work for his previous employer. The court noted that "rationale underlying our decisions that a seaman may forfeit his right to maintenance and cure is that the seaman has a duty to mitigate his damages." <u>Id.</u> at 264–65 (citing <u>Caulfield v. AC & D Marine, Inc.</u>, 633 F.2d 1129, 1133 (5th Cir. Unit A 1981); <u>Sanford Bros. Boats, Inc. v. Vidrine</u>, 412 F.2d 958, 974 (5th Cir.1969)). The seaman in <u>Dowdle</u> found employment in three other places after he quit his original job. <u>Dowdle</u>, 809 F.2d at 264. The Court concluded that because the seaman "was fit enough to work by his own choice in his accustomed trade, there is no reason to award him maintenance for periods in which his sustenance was provided by others." <u>Id.</u> at 266. Other decisions also consider "maintenance not as a payment owed from shipowner to seaman, but as an obligation of the shipowner to ensure that the seaman can afford food and lodging." <u>Hall v. Noble Drilling (U.S.) Inc.</u>, 242 F.3d 582, 588 (5th Cir. 2001).

As of the time of his deposition on June 8, 2010, Mr. Parker was still unemployed and it is unclear from the record whether he

13

was employed during the period after he quit his job with Atlantic Sounding Co. But even if Mr. Parker was unemployed the whole time, he failed to mitigate the damages by voluntarily quitting his job. If he felt, as he asserts, that his "light duty" was too dangerous, he should have brought this fact to the attention of a supervisor. Atlantic Sounding Co. made an attempt to ensure that Mr. Parker could afford food and lodging by offering him the same pay and accommodating his medical restrictions. Consistent with the foregoing Fifth Circuit jurisprudence, a seaman who fails to mitigate damages forfeits his maintenance payments. Nonetheless, forfeited maintenance payments do not automatically preclude eligibility for cure because maintenance and cure benefits are two distinct components. Mr. Parker may still be able to receive cure so as to cover his reasonable medical expenses, incurred in connection with his hand injury until "maximum cure" is achieved. <u>Pelotto v. L & N Towing Co.</u>, 604 F.2d 396, 400 (5th Cir. 1979) (citing <u>Farrell v. United States</u>, 336 U.S. 511 (1949); <u>Myles v. Quinn Menhaden Fisheries, Inc.</u>, 302 F.2d 146, 150 (5th Cir. 1962)).

Therefore, Defendants met their burden of proof in showing that there is no genuine issue of material fact on the issue of maintenance. However, the issue of cure was not addressed by Defendants' Memorandum in support of their Motion for Summary Judgment. Thus, their Motion for Summary Judgment is denied on the issue of cure.

*Unseaworthiness Claims:*

Unseaworthiness is a condition of a vessel that "might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit." Usner, 400 U.S. at 499 (citations omitted). In Usner, as in the case at bar, the claim for unseaworthiness was based on an "isolated, personal negligent act" of the petitioner's fellow seaman. Id. at 500. The Supreme Court emphasized that "[t]o hold that this individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence that we have so painstakingly and repeatedly emphasized in our decisions." Id. Unseaworthiness is a condition, which must be established with more that a single act. Id.

To show that the crew is unfit, Mr. Parker would need to demonstrate that the "number of men assigned to perform a shipboard task might be insufficient" or that the "method of loading her cargo, or the manner of its stowage, might be improper." Id. at 518. See also Robinson v. Showa Kaiun K. K., 451 F.2d 688, 690 (5th Cir. 1971) (holding that where the method of removing hatch covers by use of a derrick bucket was proper, and where a longshoreman was injured when a fellow longshoreman pushed the bucket without giving warning during an otherwise seaworthy and nonnegligent process of opening hatch cover to unload, the push of the bucket was an isolated, personal negligent act of a fellow longshoreman, which did not render

"unseaworthy" the otherwise seaworthy vessel).

Defendants met their burden to demonstrate the absence of material fact on the issue of unseaworthiness because there are not enough facts in the record to support the allegation that the vessel's condition was unseaworthy. There is nothing in the facts to show that the process which injured Mr. Parker created an unseaworthy condition. Rather, Plaintiff's Memorandum points to isolated acts of negligence by fellow employees.

*Jones Act Negligence Claims:*

Defendants maintain that in his injury report Mr. Parker admitted that the incident was purely an accident, and not the fault of any person, company, or defective equipment. Also, Defendants assert that Mr. Parker himself was responsible for the accident as he was familiar with the routine procedures. Mr. Parker, on the other hand, asserts that negligence of his co-workers contributed to the incident. Specifically, he claims that his supervisor ordered him to grab the line and that the person in charge of the other side of the line was smoking instead of performing his duties.

The Jones Act provides a seaman a cause of action for injuries sustained as a result of an employer's negligence. Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997) (*en banc*). A seaman is entitled to recover under the Jones Act if his employer's negligence is the cause, in whole or in part, of his injury. Id. In order to establish causation for a

Jones Act claim, the Plaintiff bears a "featherweight" burden of proof: the Plaintiff need only establish that the actions of the Defendant contributed to the injury even in the slightest degree. <u>Gavagan v. United States</u>, 955 F.2d 1016, 1019 (5th Cir. 1992). Contributory negligence does not bar recovery under the Jones Act. <u>Id.</u> "Proximate cause is not destroyed merely because the Plaintiff may also have contributed to his own injury." <u>Id.</u>

Even if Mr. Parker was negligent in grabbing the rope, his own negligence would not bar recovery but would affect the apportionment of fault. Further, Mr. Parker's alleged admission that his injury was purely an accident occurred right after his injury and his judgment might have been affected by the injury. Thus, the injury report is not dispositive on the issue of Defendants' negligence. There are enough facts in the record to support the potential finding of negligence on the part of Atlantic Sounding Co.'s employees, and hence, under the theory of *respondeat superior*, of negligence on the part of the Defendants. Defendants failed to meet their burden in showing the absence of disputed material facts.

Consequently, Defendants' **Motion for Summary Judgment (Rec. Doc. 30)** is hereby **GRANTED** on the issue of maintenance and on the issue of unseaworthiness. Defendants' **Motion for Summary Judgment (Rec. Doc. 30)** is hereby **DENIED** on the issue of cure and on the issue of Jones Act negligence.

New Orleans, Louisiana this 14th day of July, 2010.

                                                _____
                                                CARL J. BARBIER
                                                UNITED STATES DISTRICT JUDGE